All rise. Oh yes, oh yes, oh yes. The Honorable Appellate Court, 5th District, Fayetteville, Illinois, is now in session. Please be seated. All right. Good morning, everybody. Let's start with the Holmon v. Village of Alorton. May it please the Court. Good morning. My name is Jory Ripling here, and I'm here representing the Fayetteville case, which now has been going on for 16 years. First off, I would like to say that we are not attempting to assert the powers of the federal courts. That has never been the purpose of the case, and we are not trying to change any orders of that court. What we are attempting to do is, with the federal courts that advise us, is our method of enforcing the contract, and filing a lawsuit in state court for breach of contract. What we had here was the Village of Alorton went bankrupt. We had over a $977,000 burden for the unnecessary, and not only unnecessary, baseless shooting of my client, resulting in a foot drop. He was alive during the bankruptcy. We were 70% of the debt to the Village of Alorton at that point in time. If we had had time for the filing of bankruptcy, it would have been larger because attorney fees were going to be granted. They filed the bankruptcy, and they said they had this new truck stop. It was a tip arrangement, and it was going to come in off of that in five years, because we maybe put the payment of the judgment off for five years. Knowing the history of Alorton and the payment, we knew it was a distressed city, and we had to work with them. We were in control of the bankruptcy, because if we had not agreed to the bankruptcy, it would not have occurred. We held over 50% of the debt, and under the federal statutes, we were in control. Mr. Ripplinger, why is it that you think this is the operative contract to rescind, actually, as opposed to the contract you entered into on January 14, 2009? Why isn't that the operative contract? This Court may decide that that is the operative contract, the $600,000. We're asking for rescission of that contract and putting the parties back in their place. I thought you were asking for rescission of the very first contract where you got the big judgment. No, no, no, ma'am. That was a judgment. I'm sorry. You're right. It listed in bankruptcy. And then you settled it. And we settled it by making the contract with the $600,000 payment of so much, $2,500 a month, over a 20-year period. So you are seeking to rescind that one? Yes, ma'am. The January one. Rescind it or any alternative enforcement of the $600,000 contract. Counselor, and on the enforcement of the alternative relief, let's call it, enforcement of the contract, was that raised with the trial court? I know you've raised it here and you would like for us to grant you that relief. Was that raised with the trial court either during the argument on the motions or in the motion you considered? I don't know if it was or not, quite frankly. That is the judgment of the courts. We were seeking rescission, but we also asked for a money judgment. And it would be within the court's discretion, I think, to decide that we couldn't have rescission and there would be an inner judgment for the $600,000 less than $20,000 of payment. That was certainly an option available to the court, which the court could have done. And I guess that's my question. Did you ask the court to do that? Your pleading in your – the prior clause in your pleading was very specific. You wanted the $900,000 plus. But the court can ask. It said nothing about any alternative relief or even the saving clause or such relief if the court were being just. So I was wondering if the trial court knew that you really wanted the alternative. I didn't want the alternative, but the alternative was available to the court because a prayer for relief is just that. If you recall, prior to the legislature changing the rules in court cases, it was common to see huge amounts in prayer knowing full well you weren't going to get that. But if it turned out to be a default, you'd have to start all over again because if you were raising – if you wanted to raise the ad-dominant, the ad-dominant is an artificial number and has really no effect except you can't exceed it if it's a default. The court could give whatever relief of the pleadings justified. And in this case, they certainly justified an award of a judgment for the amount of the contract. But we're not dealing with a judgment. We're dealing with a contract. There isn't a judgment as a result of the bankruptcy. So we would need a judgment to be able to enforce the contract one way or the other. We believe that a rescission is the preferable mode because the defendant, Allerton in this case, got 100 percent of really what they were asking for. We agreed to reduce our judgment. They got bankruptcy. If we didn't reduce our judgment and we didn't agree with bankruptcy, they would have gone home. They would have been filing for nothing because we were in control. Just on the theory of relief by rescission, we've got a federal bankruptcy code. We've got a common remedy in contract law rescission. And I take it that you looked in other jurisdictions and if there was a case on point, that under a bankruptcy, a Chapter 11 bankruptcy plan where there's been a default, and no doubt there's been a lot of defaults. But Chapter 11 was the last one. Let me finish my question. Okay. So you've looked in other jurisdictions. Did an off-bed search. I'm sorry? Did an off-bed search on Westlaw. And we're not able to find anything to support your theory of rescission? No, because they say the remedy, which the federal court in St. Louis actually told me when I tried to go in and set aside the entire bankruptcy, that my remedy was to stay for breach of contract. And I found no law limiting what relief you could get for breach of contract. Rescission is one relief that you could get. Money judgment is another. Money judgment for the amount of the original judgment, certainly the re-inceded judgment. There's very little law on Chapter 9. I will tell the court that I've read every case there is of Chapter 9. There's only about 40 of them. And I'm not a bankruptcy lawyer. And I learned more about bankruptcy than I really wanted to. But when I got involved, it was considered an exaggeration of my power to do so. And at that point in time, I read every case there was on Chapter 9. There is no case applicable about rescission, breach of contract, anything else, except that that is the remedy. The case, rather the statute cited by counsel in Chapter 11, isn't applicable to Chapter 9. Counselor, let me follow up on that. I referenced Chapter 11. It's been 25 years since I spent much time in bankruptcy court. My recollection is that 9 and 11 are similar in that the debtor gets a discharge upon confirmation of the plan, as opposed to a 13 and a 12 where there is not a discharge until completion of the plan. So there aren't a lot of provisions between the 9 and the 11. And, in fact, I cited in my brief the sections of Chapter 11 that are applicable to Chapter 9. However, that isn't one of them. They have their own discharging provision in Chapter 9. And what happens with that? That's not much help. It says you're discharged if everybody agrees. What it comes down to really is another bringing up the grades, for example, and claiming that that section of the code that 11, Chapter 11, applies to this case is incorrect. It does not. In fact, as a statute, there isn't a Section 341 anymore in the quote. And in this quote, there's this statement thereafter, Section 14C of the 1898 Act, as incorporated in Chapter 11, Section 371. Well, that's true. That's not a quote from the case. That's a statement by counsel. I think, counsel, the 9 plan also called for a discharge upon completion in Section 7.1. Yes, sir, it did. And that may be a problem, but I've been coming at it on many cases that you can't have rescission. You go back to where you began to. The allergen had received the benefit of the reward. They were allowed to discharge every other deficit they had, and they're still going to be allowed to discharge every other deficit they had, $300,000 or $400,000 worth. That's gone. It's forever gone. I don't believe there's any way that can be reinstated. They helped. They did it for their part in that case. We got no benefit. That's just the standard, old standard for rescission, where one party didn't receive all the benefit of the bargain, and the other party doesn't get anything. Well, you got some payments. Well, we did. You got some payments on the contract. $20,000. It should have been about $100,000 by now, and we haven't gotten another payment in this case since then. And, of course, we would. Why would we? Because we cannot bring another lawsuit to breach a contract. Why not? Because the courts ruled that we can't get it. The courts ruled that in this case, judgmentally, they admitted it. There was liability. They admitted they had made this contract. They admitted they had not paid anything, and the court dismissed it on the case. You're talking about Judge Kelly's order. Yes, ma'am. Yes, ma'am. Right, because you asked for rescission in the prayer for relief. I didn't ask for rescission, and I'm not in judgment. I think that would bar me from raising to the cutting ground and bringing another lawsuit. If this court affirms that order. Yes, ma'am. But Judge Kelly could have given you judgment on the pleadings. I believe he could have. There was an admission of liability of $600,000, and there was an admission that they had paid $20,000. Judge Kelly could have, under the way I believe the pleadings were structured, given us a verdict for $580,000. Well, the Civil Practice Act on the prayer for relief, even if your prayer is wrong, doesn't necessarily limit the court. No, ma'am. It's 735 YLCS 52604 and 617. Whatever your pleadings justify can be awarded. Judge Kelly could have just as easily given us a verdict for $580,000 as not. Just because we asked for it doesn't mean we're going to get it. And just because we asked for one relief, it doesn't mean that it can't get different relief. One of the cases we cited, they did not ask for an imposition of a constructive trust, for example. They asked for a money shift, and money was put in the constructive trust anyway. They didn't plead for it, but the judge decided that the facts of the case as pleaded justified the imposition of the trust. Just as in this case, if we did not, if the judge decided that we had not made a good case for rescission, and frankly I don't see how we could, then he could have awarded $580,000. But let's suppose he had granted rescission. Then you would have been back to the, that's why I asked about which contract you want to enforce. Would that put you back in the $900,000 or would that put you back at the $600,000? I think it would put me back at the $900,000. Yeah, that's what was confusing me in your brief. You got the benefit of that bargain from the federal court, bankruptcy court. So aren't you really at the $600,000 that you bargained for and entered into an agreement with Allentown for? Isn't that where you're at? I can't find any cases on what happens in those circumstances. Certainly $580,000 is a possibility, a minimum possibility. But I'm a plan explorer. I'm going to try to get the most I can get out of the situation. I'll make no apology for that. In fact, I'd be asking the court to award attorney's fees if the contract was rescinded. Because that's what it really means. When you have a contract in the bankruptcy court, the other side of that contract is they get the bankruptcy. And... Well, I think the horse is out of the barn on that one, don't you, really? It might be. I mean, they've been discharged. That case is over. But it seems like when they were discharged, you ended up with a contract. That's true. And I couldn't find a case on rescission at all anywhere in what happens. How about judgment on the pleadings or a money judgment? A money judgment could be entered in the case. Did you find a case like that? I believe the only cases I've found evident were appealed. There are cases that say that you have a remedy to breach a contract in the state court. That's clear. What happens after you go to the state court? Those cases never went up, probably because they realized that they were stopped. They didn't hold them up. They didn't pay them. But it didn't go to the appellate courts. There are very few cases on what happens when somebody doesn't pay, frankly. You know, Judge Kelly's order is very, very specific if you read it carefully. He says that motion for judgment on the pleadings as it relates to the issue of rescission is granted. Do you think he left any other room for you, writing it that way? Defendant's motion, by the way. I didn't write that. They're all— He didn't say all prayer for relief is denied. He specifically relates it to the issue of rescission. Then why didn't he grant it as a summary judgment? I don't know. When somebody in court grants judgment on the pleadings, that's pretty much the end of it. It may be a narrow—you may have worded it narrowly, but judgment is judgment. And I don't think that there was anything reserved in that. If there is, that's fine. I would be more than happy to go back to court and ask him for that thing. But based upon the finality of his final order, when you get down to the bottom of it, judgment's entered for the defendant against the plaintiff, and it doesn't limit that judgment. So maybe he would like to do it that way. I don't know. But that isn't the way it's—when you finally get to the bottom line, judgment's entered. It's either entered partially or it's entered in full. When it says judgment's entered, that's it. That's the end of the case. And we have absolutely no remedy at this point in time. My client is dead, and this is what legacy he could leave to his family. His father is the executor of the estate, and we can't do anything. I don't think we can do anything under the current state of the law. I think we're barred. Further questions? I don't believe so. Thank you, counsel. Argument for the appellee. May it please the Court. My name is Jamie Desai, and I represent the appellee, Village of Alberton. Alberton is in complete agreement with the appellant that the bankruptcy plan and Trinity, that is a subject of these proceedings, Chapter 9 bankruptcy plan, is a contract between the parties and created a contractual relationship between Alerton and the appellant. And Alerton is also in agreement with the appellant that he has a right to enforce that contract against Alerton for nonpayment. Where Alerton breaks with the appellant is where he contravenes the rationale of the Bankruptcy Act in established case law and attempts to set aside or modify provisions of the almost now 10-year confirmed bankruptcy plan. Well, counsel, let me get about you there. The appellant's concerned about Estoppo and Richtie and Cotton if they go back into the state court to try to collect on the bankruptcy plan, the new agreement. And Mr. Ricklinger didn't get the benefit, but I did have seen you shake your head no, so that the appellee believes that the appellant would not have an issue of race, gender, and color or be estopped from going into state court to enforce that bankruptcy plan because of this court's ruling below. You're right, Your Honor. We do not. You do not what? Sorry, we do not believe. We believe that the appellant still has an avenue to follow the plan or sue Alerton for enforcement of the contract, of the bankruptcy plan, of this $600,000 judgment reduced to $200,000 judgment. And the reason that I say that is, as the court, this court also stated, Judge Pelley's judgment was very specific and narrowly tailored to deny the appellant's request for rescission. And were all of your pleadings related to decision in the record? Does the record only limit it to that? I believe so. Because I think the line Mr. Ricklinger's talking about, that he's worried about, is where he says, this order disposes of all controversies in dispute, all controversies in dispute between the parties. So I'm wondering if your pleadings were limited to this rescission or if they went beyond and said you don't get any relief, then I think Mr. Ricklinger would be correct if you expanded beyond that. Well, speaking to the attorney that represented Alerton in the trial court proceedings, I believe that there were multiple conversations between the trial court judge, Judge Pelley, and even counsel for Alerton that the appellant did have an avenue to seek to enforce the contract. However, the pleading, the complaint that the appellant filed in the trial court, explicitly asked that the contract be revoked. And so, Rescinded. Sorry, rescinded. And so that is where I believe that Judge Pelley could not enter a money judgment enforcing the $600,000 reduced to $200,000 judgment, because in order to do so, it would directly contravene the relief requested by the appellant. Where the appellant was asking that the contract be rescinded, Judge Pelley could not then enter a judgment enforcing the contract. But if the appellant were to file a complaint against Alerton, asking for enforcement of the actual contracted court terms and the judgment, then I do believe that he could do so. Well, counsel, was it, and I asked Mr. Ricklinger this question, was the trial court ever asked to consider this alternative relief, either an argument on these motions or a motion to reconsider? I don't believe so. So that's where I believe that there was the encouragement to actually file a suit or a complaint seeking enforcement, as I said, by the trial court and by counsel for Alerton in the trial court. So I think there was a lot of encouragement to actually file for enforcement rather than filing for rescission. So what about the Civil Practice Act, 2-604, where it says that the prayer for relief isn't necessarily limiting. Would Alerton have been surprised if, in fact, the judge awarded a money judgment? Would that have caught you by surprise, or were there all of these other discussions going on such that you wouldn't have been surprised or Alerton's counsel would not have been? I think pursuant to the complaint that was actually filed, there would have been surprise because that relief, again, would have directly contravened the relief that the appellant was seeking at that time. But that section of the Civil Practice Act says that a court could do that absent some kind of surprise or prejudice to the party opposing. I do agree that the relief section is to be interpreted somewhat broadly, but I don't think that the court can provide relief that directly contradicts the relief requested by the complainant at that point. So do you think this court has the power to reverse and remand for further proceedings on the complaint? Or do you think we affirm and let Mr. Ripplinger go back based on your representations and refile? I believe that this court can affirm the trial court's holding, and Mr. Ripplinger can refile to actually enforce the judgment or enforce the contract that is existing between Alerton and the appellant. Those words could come back to haunt you, you know. Thank you. As appellant cited in his brief, and the appellee did as well, the 7th District has explicitly stated that a confirmed plan of reorganization is a contract between the parties, and the terms of the plan describe the rights and obligations. By the very piece that appellant cites, too, his argument fails. The rights and obligations created and described by Alerton's Chapter 9 bankruptcy plan limit the obligation owed to the appellant to the $600,000 judgment to be paid in $2,500 monthly installments for 20 years. That's the extent that the appellant's right in claim pursuant to the contract that is the bankruptcy plan, and the 7th District has explicitly stated that upon confirmation of a plan, the bankruptcy proceeds are dismissed, a discharge is entered for all previously existing debt, and the debtor and the creditor enter into a contractual relationship. Alerton has admitted in oral arguments in trial court and in its appellee's brief that it's failed to make all of the payments as outlined in the bankruptcy plan. And it's admitted that appellant is owed the judgment that was prescribed in the bankruptcy plan minus credit for payments previously received. But in order for the appellant to recover what he is owed under the contract, again, he must file to enforce the contract, not to rescind it. The case law that appellant relies on in his argument for rescission is not on point because it doesn't apply to a bankruptcy plan. It pertains to, or it does not apply to the contractual relationship between debtors and creditors after confirmation or even a bankruptcy plan. And as Mr. Winger stated multiple times in his oral argument, he couldn't find case law supporting or substantiating his arguments for rescission because it doesn't exist. He alleges that in his brief that no case law can be found, and I believe he even said it during his oral argument, which restricts state courts from granting any particular relief for breach of contract formed in the bankruptcy courts, which is completely untrue. The appellee, or sorry, Allerton cites in its appellee's brief to, excuse me, a case from the Central District of Illinois titled In Re Curdie. And there the court really outlines the limitations of creditors in enforcing its rights under a bankruptcy plan to the rights actually outlined in the bankruptcy plan. The court states that when a debtor fails to fulfill its obligation to a creditor, as outlined in the plan, the only remedy available is enforcement. And it explicitly states that revocation is not a remedy. The rationale behind the court's ruling is that the bankruptcy plan acts as a settlement and a discharge of all old debts. So if a debtor fails to fulfill the new debts and promises outlined in the plan, the creditor's remedies are limited expressly to the contracted and agreed upon new promises. The plan, the court found that the plan acts as an absolute settlement. So all of the, so even if a debtor fails to pay on new obligations created by the plan, the old debts are not revived. The court states that the creditor receives what he bargained for in the plan, and he has no right to claim more at that point. Nothing in the Bankruptcy Act suggests that the debtor's failure to achieve promises made in a confirmed plan will reinstate original obligations. That case is directly on point to the matter before us today. As was stated, as I stated previously, the contracted upon obligation owed to the appellant by Allerton is for the $600,000 judgment, which was then reduced to the $200,000 judgment. And so the terms of the actual Chapter 9 bankruptcy state that any debts prior to confirmation are completely discharged, and creditors have absolutely no claim, no right to any discharged debts as of that date. Do you think that there's an interest running on that judgment or that contract? I would have to take a look at it again. I don't believe so. The provision that I'm referring to in which it states that any previous debts are discharged, it does refer to interest. I'm not sure if that's particular to the interest, or if that interest is particular to the debts that existed prior to discharge or after, but I would say I don't believe so. Did this contract ever get enrolled as a money judgment? Do you know? I'm afraid I don't know. Okay. Aside from the clear holdings of the bankruptcy courts, that rescission is not permitted in this situation under the Bankruptcy Act. It's also inappropriate because the parties cannot return to status quo at this point. It's been almost 10 years since this bankruptcy plan was entered into. Appellant has acknowledged that in his brief, in the trial court, and though he does argue that the parties can be restored to their original positions, limited in relation to one another, that argument fails. The parties can't be returned to status quo. They can't be returned to status quo in a vacuum directly in relation to one another. The appellant states he's not attempting to usurp the power of the federal court. However, what the appellant is asking this court today is to grant him relief that was previously denied to him by both the bankruptcy court and the district court, and, again, by Judge Kelly, the trial court. It's been mentioned in the district court's holding, as well as in the oral arguments in the record from the trial court, that the contention here has to do with the attorney's fees that were contracted between the decedent and Mr. Ripplinger's firm, and the reduction of those attorney's fees based on the trial court's redirection of payments from Allerton to Ms. Goodloe for satisfaction of her judgment against the decedent. Have those been paid? Are those being paid? I believe the method in which the payments were supposed to be made was that the $2,500 a month payments would be made, and two-thirds would go to Ms. Goodloe, and one-third would go to the appellant. So nothing's been paid? So aside from, I think it's the $20,000 that has been paid, I don't believe that they haven't been paid since then. If you acknowledge you owe, why not pay? I think Allerton's ability to pay at this point. There's still room. But as the district court stated in its judgment, though the attorney's fees were reduced, there still is no basis to reopen the bankruptcy case. Essentially, the appellant is coming before this court to take another bite at the apple and is asking the court to do what the bankruptcy court and the district court and Judge Kelly have already denied at this point. The appellant has a clear basis to file for enforcement of the obligation created in Allerton's bankruptcy plan. He just has to do it. Again, with regards to the money judgment argument, it is our position that if the appellant seeks money judgment on the contract that actually was entered into in the legitimate debt owed to him, that he has an avenue to seek relief on that. He just has to file a complaint for enforcement of the contract rather than relying on his complaint or his pleading for rescission. It's for the foregoing reasons that the appellate, the village of Allerton, respectfully requests this court enter its order firming the order of the trial court. Just one last question. So, you're saying Allerton would not raise the issue of collateral estoppel or raise jucata if Mr. Ripplinger went back and refiled for enforcement. Is that true? Based off of my review of the record at this point, I believe that there was substantial encouragement from, as I said, Allerton's attorney, trial counsel, and a trial court judge to file for enforcement. So, I do not believe so. You don't believe he would raise jucata or collateral estoppel as you sit here today? As I sit here today. That's fair. Okay. Thank you. Thank you. Any rebuttals? Yes, Your Honor. I was looking to order a transcript of oral arguments because the counsel was admitting that they would raise jucata. But she closed the door on that again, saying, well, we might not raise it. I think they'll raise it. I think they'll raise everything they can to prevent us from collecting on our judgment. I don't think we can go back in right now and file a lawful lawsuit to get a money judgment for the original contract. They have done nothing but ---- No. Not that I can recall. Who is trial counsel? Chuck Courtney. So, same firm? Same firm. What they really argued in this case is an ovation, both from the bankruptcy code argument and from just the general argument, there's a contract that took place of the original judgment. So that when you make a new contract, the old contract goes to white. The problem with that is, one, the bankruptcy argument doesn't work because it doesn't apply to Chapter 9. And neither issue was raised in the trial until oral argument. Ovation wasn't raised at all. Ovation is an affirmative defense that must be pleaded. That's not good. It is waived. In this situation, they waived it, plus the Curry case. They cited Curry in the oral argument. They didn't have a copy of the case for us. They didn't have a cite for us. That was the first time it had ever been raised. Yet, they got a judgment on the pleading. I don't think they should have. Thank you, counsel. We'll take this case under advisement as issued in the decision. We'll take a short recess, a quarterly recess. All rise.